## Daniel K. Reamey, Plff. in Err., *v.* William C. Bayley, Trustee for Mary E. Reamey.

An agreement between a husband and a third person, as trustee for the wife, that, in consideration of the discontinuance of a suit by the wife for divorce on the ground of intolerable treatment, the husband will execute a bond and mortgage to the trustee to secure the payment of $10,000 (instead of $4,000 by antenuptial settlement) in case, by the husband's treatment, the wife's condition should become intolerable, is a valid contract and not contrary to public policy.

After the discontinuance of the suit, the execution of the bond and mortgage, the return of the wife to cohabitation with the husband, and his subsequent breach of the condition, the trustee may maintain an action against him on the bond.

A provision making the wife the sole judge as to what shall constitute a breach of the condition is void because contrary to public policy.

(Argued May 26, 1887. Decided October 3, 1887.)

Cited in Barbour v. Barbour, 49 N. J. Eq. 429, 24 Atl. 227, compelling performance of contract whereby husband agreed to convey real estate to wife in settlement of divorce suit.

NOTE.—The facts of this case are analogous to those of Fisher v. Filbert, 6 Pa. 61, in which a like determination was made.

Postnuptial contracts may be enforced. Zeok v. Mercantile Trust Co. 194 Pa. 388, 45 Atl. 215. And the settlement of family differences will furnish a sufficient consideration. Burkholder's Appeal, 105 Pa. 31. So contracts for immediate separation will be enforced. Frank's Estate, 195 Pa. 26, 45 Atl. 489; Biery v. Steckel, 194 Pa. 445, 45 Atl. 376; Speidel's Appeal, 107 Pa. 18.

As to validity of contract between husband and wife to compromise pending or contemplated divorce suit, see the full presentation of the authorities in editorial note to Oppenheimer v. Collins, 60 L. R. A. 406.

January Term, 1887, No. 85, E. D., before GORDON, TRUN-
KEY, STERRETT, GREEN, and CLARK, JJ.   Error to the Com-
mon Pleas of Blair County to review a judgment on a verdict
for the plaintiff in an action of debt.   Affirmed.

The facts as they appeared at the trial before DEAN, P. J.,
were stated in his charge to the jury, which was as follows:

The issue you are sworn to try is an action of debt brought
by William C. Bayley, trustee for Mary E. Reamey, against
Daniel K. Reamey.   The action is founded on a written instru-
ment which it is necessary to read that you may start with a
proper understanding of the case.   It appears from the papers
offered in evidence that on the 15th day of November, 1877, an
antenuptial agreement was made between Daniel K. Reamey,
the defendant in this case, and Mary E. Gardner, to whom he
was about to be married, which reads as follows:

"Agreement made the 15th day of November, A. D. 1877, be-
tween Daniel K. Reamey, of Hollidaysburg, county of Blair
and state of Pennsylvania, of the one part, and Mary E. Gard-
ner, widow of Jacob Gardner, deceased, of the city of Harris-
burg and state aforesaid, of the other part.

"Whereas, a marriage is intended shortly to be solemnized be-
tween the said Daniel K. Reamey and Mary E. Gardner, and
upon the faith of said marriage it has been mutually agreed as
follows: the said Daniel K. Reamey hereby covenants and agrees
with said Mary E. Gardner that she shall receive out of the said
Daniel K. Reamey's estate the sum of $4,000, to be paid with
interest from the time of his decease, as soon as convenient with-
out sacrificing any portion of his estate.   And the said Mary E.
Gardner, in consideration of said covenant and agreement, cove-
nants and agrees with the said Daniel K. Reamey to accept the
said sum of $4,000 payable as aforesaid; and in further con-
sideration of the contemplated marriage and the fact that she
has an estate in her own right and no one dependent upon her
for support, she, the said Mary E. Gardner, hath released and
forever quitclaimed to him the said Daniel K. Reamey, his
heirs, executors, administrators, and assigns, all her right, in-
terest, and claim of dower, distributive share or otherwise in the
real and personal estate of the said Daniel K. Reamey.   It is
further covenanted and agreed that if the said Daniel K.
Reamey should devise and bequeath by will to the said Mary E.

Gardner an amount not less in value than $4,000, then this agreement shall be void and of no effect. The said Mary E. Gardner further covenants and agrees that if hereafter she shall controvert or dispute or call in question the validity of this agreement, or shall prosecute any action or suit for dower or any other part of the real and personal estate of the said Daniel K. Reamey, she shall thereby forfeit all claim to any portion of said estate."

This is the antenuptial agreement entered into in view of marriage. They were married some time afterwards. Some time after the marriage, troubles arose between Reamey and his wife, and Mrs. Reamey commenced proceedings in divorce, which proceedings were pending at the time this bond, on which suit is brought, was executed. The bond is as follows:

Know all men by these presents, that I, Daniel K. Reamey, am held and firmly bound unto William C. Bayley, trustee for Mary E. Reamey, in the sum of $20,000, to be paid to the said William C. Bayley, trustee as aforesaid, his certain attorney, heirs, executors, administrators, or assigns, to which payment well and truly to be made I do bind myself and my heirs firmly by these presents. Witness my hand and seal the 26th day of November, in the year of our Lord, 1881.

The condition of this obligation is such that if the above bounden Daniel K. Reamey, his executors, administrators, and assigns, do well and truly pay or cause to be paid unto the said trustee of Mary E. Reamey, his certain attorney, heirs, executors, administrators, and assigns, the sum of $10,000, one day after the date hereof, according to the provisions of a certain agreement made by and between the said Daniel K. Reamey and the said trustee, bearing even date herewith, without any fraud or further delay, then this obligation to be void; otherwise to be and remain in full force and virtue.

[Signed.]                Daniel K. Reamey.

Now follows the agreement bearing date with the bond, in the sum of $20,000 conditioned for the payment of $10,000:

Memorandum of an agreement made this 26th of November, 1881, by and between Daniel K. Reamey of Hollidaysburg, Pa., of the first part and William C. Bayley, trustee for Mary Reamey, wife of Daniel K. Reamey.

Whereas, Prior to the marriage of said Daniel K. Reamey and Mary Reamey an agreement was made between them, dated the 15th of November, 1877, acknowledged by Daniel K. Reamey before Samuel W. Collum on the same day and acknowledged by Mary E. Gardner, the said Mary E. Reamey, on the 16th of November, 1877, by which said agreement the said Daniel K. Reamey settled upon the said Mary the sum of $4,000 to be paid to her out of his estate in lieu of dower in case she would survive him; and whereas, since the marriage, unhappy disputes have arisen between the said husband and wife, resulting in a separation and a suit for divorce by the said wife against the said husband, now pending in the court of common pleas of Blair county; and whereas, the said parties desire to live together in harmony, it is hereby agreed as follows:

"First, the said Mary E. Reamey agrees to withdraw the said suit for divorce, at the cost of the said Daniel K. Reamey.

"Second, the antenuptial agreement mentioned in the foregoing recital shall be modified by making the words 'four thousand dollars,' wherever therein mentioned, to read 'ten thousand dollars,' the said alteration being made with the full knowledge of the entire estate of said Daniel K. Reamey on the part of said Mary.

"Third, the said Daniel K. Reamey shall herewith execute a bond and first mortgage to said trustee on his farm on the Juniata river for the purpose of securing to the said Mary the payment of the said $10,000 at his death, in the event of her surviving him, and also for the purpose set forth in article four.

"Fourth, the said Daniel K. Reamey and Mary E. Reamey shall behave towards each other kindly and faithfully; and if the said Daniel K. Reamey shall behave himself otherwise towards his said wife so that her life, by his conduct, shall be rendered miserable and intolerable, then and in that contingency the said bond and mortgage shall become immediately due and payable to the said trustee for the absolute use of the said Mary. And the said Mary shall alone and exclusively determine the existence or happening of such contingency; and the said bond and mortgage shall bear interest from the happening of said contingency.

"Fifth, the original antenuptial agreement signed by said Daniel K. Reamey is annexed to this agreement for the use of said trustee, and a duplicate of said antenuptial agreement,

signed by Mary E. Gardner, now Mary E. Reamey, is annexed to a duplicate of this agreement for the use of the said Daniel K. Reamey, and they are the papers referred to in the recital as the antenuptial agreement.

"Sixth, it is understood that if the bond and mortgage for $10,000 should be collected from Daniel K. Reamey under the provisions of the fourth article, that the said Mary shall not be entitled to any share of the estate of Daniel K. Reamey in case of her surviving him, and it is further understood that the remaining provisions of said antenuptial agreement are not to be affected by this agreement beyond this change in the sum of money as above set forth.

"In testimony whereof the said parties have hereto set their hands and seals, and the said Mary E. Reamey, for the purpose of showing her consent thereto, has set her hand and seal."

This was a postnuptial settlement to take effect on the happening of either of the two contingencies: First, in case she survived him, this being a contingency, of course, beyond the control of either, she might or might not enjoy the settlement under the stipulation. If she should die first, neither she nor her heirs would receive anything. If she should survive him, she would receive $10,000. Second, in case he should behave himself otherwise than kindly and faithfully towards her, so that her life should be rendered miserable and intolerable, then the bond was to become immediately due and payable.

The happening of this contingency depended on the voluntary act of the husband. The contract of settlement in this particular, it will be noticed, does not make separation the contingency, but good behavior on the part of the husband. Separation may result from unkind treatment; but the contract, so far as expressed, does not suggest separation. We cannot say it is necessarily implied. Therefore, as we construe it, the second contingency upon which she comes into the enjoyment of the amount settled upon her is whether or not the husband, by unkindness or unfaithfulness, renders her life miserable and intolerable. It is strongly urged by the defendant's counsel that such a stipulation is void because against the policy of the law. It is argued that the policy of the law is to encourage and promote harmony in the marriage relation; that this

contract invites violation of marital duties by a direct appeal to mercenary motives; that it provides for a bribe of $10,000 for the promotion of domestic discord.

As we have already said, we cannot say, on a fair construction of this contract, that the contingency on which the $10,000 becomes due and payable is separation. On the other hand we say to you, it means just what it says: that she was to come into the immediate enjoyment of the amount settled upon her if he did not behave kindly and faithfully towards her, and her life was rendered miserable and intolerable. Whether this contingency happened is a question to be determined by you from the weight of the evidence.

The plaintiff alleges that the right to sue on the contract is to be determined by her; so, at this place, we answer the plaintiff's points:

First, by the contract in evidence the bond in suit became due and payable with interest if the conduct of the defendant to his wife should become intolerable; and of this fact Mrs. Reamey was made the exclusive judge, and her determination of the fact by her written memorandum on the 22d of June, 1885, is conclusive.

We answer this point as follows: The fourth clause of the contract stipulates that the wife "shall alone and exclusively determine the existence or happening of such contingency." By the marriage contract, as well as by this contract, they were bound to behave towards each other "kindly and faithfully." If he violated the marriage contract, then, by this contract, she was to come into the immediate enjoyment of this $10,000. It was her interest, then, to decide or determine that he had not adhered to his marriage vows. It is needless to argue that such an interest would have a tendency to impel her to a reckless or unjust decision. The conclusion is obvious that it was her interest to decide in such way that the harmony of the conjugal relation would be disturbed. This power was reposed in one of the contracting parties to that relation. We hold that it is clearly against the policy of the law to give effect to such stipulation in this postnuptial contract. It tends directly to discourage that confidence, trust and forbearance on the part of the wife which should be inseparable from the marriage relation. Whether her husband did behave himself towards her kindly

and faithfully, or otherwise so that her life by his conduct was rendered miserable and intolerable, is a question to be determined by you on the weight of the evidence and not by her decision. Her declarations adverse to the husband have no bearing on the question at issue.

True, the authorities show that parties to contracts may leave the decision of disputes to the agent of one of the parties, or even to one of the parties, and both are bound by the decision; but the marriage contract is of an entirely different nature from other civil contracts. Its existence is during the life of the parties to it. It is the policy of the law to discourage any subsequent contracts between the parties which tend to bring about a rupture of the first contract. Whether the contingency would happen would depend on his conduct. Whether it had actually happened could not, with due regard to the safety of the marriage contract, depend upon the judgment of one of the parties to the marriage contract. This stipulation that she should alone and exclusively determine whether the contingency had happened is void.

Our answer to the second point is the same as our answer to the first. The third point is denied.

The defendant argues forcibly that by the same course of reasoning the entire contract must be held void as against public policy; but we hold, as held the supreme court of the state in the case of Fisher v. Filbert, 6 Pa. 61, that the settlement of a sum of money to the separate use of the wife, her enjoyment of it to be contingent on the good behavior of the husband, is not void as against the policy of the law. [While that case stands as the law, this contract must be treated as a valid one. You will, therefore, turn your attention to the evidence bearing on this issue.]

(The court then reviewed the testimony and continued:)

So far as the use plaintiff and this defendant are concerned, this case is to be judged and judged alone by their conduct between the 21st of November, 1881, and the 22d of June, 1885. You have nothing to do with either of them outside of that period. So far as appears from the evidence, Mrs. Reamey was a chaste, reputable woman at that date; and you have a right to so assume. So far as appears the husband was, at that time, a sober, industrious man, who by industry and thrift had become possessed of a considerable estate. That is how they start before

you on the 21st of November, 1881. How did they behave afterwards, each towards the other?—is the proper subject of inquiry under the evidence. Does the weight of the evidence satisfy you that he during that period behaved towards his wife unkindly, so as to render her life miserable and intolerable? If so, your verdict should be for the plaintiff for the sum of $10,000, with interest from the 22d of June, 1885. If on the other hand the weight of the evidence fails to satisfy you of this, then your verdict should be for the defendant.

The defendant has submitted points as follows:

1. The agreement of the 26th of November, 1881, upon which the bond in suit is founded, is a postnuptial contract and is void. If the agreement is void, there can be no recovery on the bond.

*Ans.* This point is denied.

2. The fourth article of the agreement having stipulated that the bond was only to be due and payable on the contingency of the defendant not treating his wife kindly and faithfully, such maltreatment was not a sufficient consideration for the bond's falling due in the defendant's lifetime; and no action can now be sustained on the bond.

*Ans.* This point is denied.

3. The stipulation in the fourth article, that defendant's maltreatment of his wife should render the bond due and payable in his lifetime, is against public policy and void, and no action can now be sustained on the bond.

*Ans.* This point is denied on the authority of the case we have mentioned. Fisher v. Filbert, 6 Pa. 61.

4. A postnuptial contract, as in this case, stipulating for the payment to the wife of her dower in defendant's estate in his lifetime, upon a rupture of friendly relations, is void and cannot be enforced in an action of law.

*Ans.* This point is denied.

5. From the fact that the husband and wife agreed upon a trustee to whom the bond was to be due and payable, it is not of greater binding effect, as the parties being in coverture cannot enlarge their power to contract with each other in regard to the wife's share in her husband's estate.

*Ans.* This point is denied.

6. The *cestui que* plaintiff and the defendant being man and wife could not, through the intervention of a trustee, enter into

an executory contract for the payment of money to the wife which was not her own estate or property.

*Ans.* This point is denied.

7. It is for the court to construe the meaning of the fourth article of the agreement; and if it was a provision for the payment of money to the wife for her maintenance upon the contingency of a future separation it is void, and there can be no recovery on it.

*Ans.* This point is affirmed, but we do not construe the fourth article as a provision for maintenance upon the contingency of a future separation. On the contrary, it is upon a contingency which is to be found by you from the evidence in the case, as we have already instructed you.

8. No suit can be entertained by the wife against the husband, except for the causes and in the manner provided in the act of the 11th of April, 1856, and the act of the 15th of April, 1851, providing for the entering of judgments against the husband for her money. This suit is not brought to recover her "property" in the sense meant by the act of 1856 and therefore this suit cannot be sustained.

*Ans.* This point is denied.

9. The parties to this suit, Mrs. Mary Reamey and Daniel K. Reamey, being in coverture on the 26th of November, 1881, could not at that time evade the provisions of the act of the 11th of April, 1856, so as to appoint a trustee and agree that a suit should be brought against the defendant upon the happening of a future contingency in his lifetime to recover the amount which it was at the same time agreed was to be her share in his estate at his death; and therefore this suit cannot be sustained.

*Ans.* This point is denied.

The assignments of error specified (1–9) the answers to the defendant's respective points, and (10) the portion of the charge inclosed in brackets and the action of the court "in submitting the case to the jury, and in not saying to the jury that the postnuptial contract was void, that the action would not lie, and that plaintiff could not recover."

*Aug. S. Landis* and *W. I. Woodcock,* for plaintiff in error. —The first seven assignments of error—the court's denial of defendant's first seven points—raises the question of the validity of the postnuptial contract of November 26, 1881.

The postnuptial contract was void, and the bond based upon it was likewise void and of no effect. It is a new ascertainment of her share as widow in his estate, and it is a contract between a man and his wife that her share in his estate shall on a contingency be payable in his lifetime, and collected by process of law. This, under any aspect of it, is clearly without consideration, is executory, and against the policy of the law, and void. Steer v. Steer, 14 Serg. & R. 379.

Except when authorized by act of assembly, husband and wife have no power to enter into executory contracts through the intervention of a trustee.

All contracts looking to a separation in the future, or dependent upon some contingency, are void, are against the policy of the law and will not be enforced. McKennan v. Phillips, 6 Whart. 576, 37 Am. Dec. 438; Hutton v. Hutton, 3 Pa. St. 100; Dillinger's Appeal, 35 Pa. 362; Hitner's Appeal, 54 Pa. 114; Tyler, Infancy & Coverture, 329; 1 Smith, Lead. Cas. 620; Addison, Contr. 1384.

A wife, by her next friend, or trustee, cannot sustain any action at law against her husband, except it be in pursuance of the act of April 11, 1856, § 3.

When a husband has deserted or refused to support his wife, or if she has been divorced from bed and board, she may have three kinds of actions or suits against him: First, to protect her reputation by action of slander; second, to recover her separate property; third, to recover her earnings.

It is not pretended here that the right to recover rested upon any of these conditions. She sued upon a bond given in pursuance of a void postnuptial contract, and becoming due not as a bona fide debt, but on the happening of a contingency which made it void and illegal. Ritter v. Ritter, 31 Pa. 396; Miller v. Miller, 44 Pa. 170.

*Samuel S. Blair,* for defendant in error.—The consideration of the bond in suit is not only legally valid, as imported by the seal, but it is shown by the evidence to be meritorious.

The defendant had succeeded by the compromise in obtaining a condonation of his brutal treatment of his wife and escaping her just claim for alimony. It was not necessary to show that she was justified in leaving him and that she had good grounds for divorce. The burden was on the defendant to show that she left without cause. Burkholder's Appeal, 105 Pa. 38.

A covenant to put an end to a suit for nullity of marriage on the ground of husband's impotence is a good consideration for the payment of an annuity to the wife. Wilson v. Wilson, 14 Sim. 405, 1 H. L. Cas. 538.

A husband and wife are competent to make a binding agreement for compromise of a divorce suit. Hart v. Hart, L. R. 18 Ch. Div. 670.

When a divorce suit is compromised by articles for a separation, the contract will be enforced. Smythe v. Smythe, L. R. 18 Q. B. Div. 544.

There is no occasion for the discussion of separation contracts here. The object of the contract was reunion, not separation. The husband had been faithless to his marital vows. His wife had been driven from home by his barbarity, and forced to seek protection in court; and the bond only furnished an additional motive for fidelity. The contract was not against but in the line of public policy, which encourages matrimonial harmony. It is not open to the objection urged that it looks to a separation. Separation is the voluntary act of the parties, but a voluntary separation would have created no liability under this contract. The liability arises from the husband's own acts and if separation thereby results it is forced and involuntary. This view is fully sustained by Fisher v. Filbert, 6 Pa. 61.

PER CURIAM:

An examination of this case fails to reveal to us any error committed by the court below. The charge and answers to the points appear to be accurate, legal and fair, and the argument of the learned counsel for the plaintiff in error has failed to convince us of the rectitude of all or any of the assignments of error.

The judgment is affirmed.