## Margaret Barbour

*v.*

## John Barbour.

1. In case a husband, against whom his wife has filed a petition for divorce, upon the ground of adultery, asking for alimony and counsel fees, enters into an agreement with his wife in and by which he promises that if she will dismiss her suit and return to him and live with him as his wife he will execute and deliver to her a deed for the house and lot in and upon which they had been living, and she accepts his offer, dismisses her suit and returns to his home in good faith, he will be required to specifically perform such contract, even though it be by parol.

2. The statute of frauds was not designed to protect the wrongdoer in case the remedy at law is wholly inadequate and there has been a partial performance of the contract.

3. After husband and wife have been separated and they enter into contracts, which are reasonable, to become reconciled and to continue their conjugal relations, it is not against public policy to enforce such contracts.

On bill and proceedings *ex parte.*

*Mr. Alan H. Strong,* for the petitioner.

Bird, V. C.

Mrs. Barbour filed her petition for divorce upon the ground of adultery. She afterwards filed a petition for alimony and counsel fees, and gave notice of an application for an order requiring Mr. Barbour to pay the amount ascertained. Of these proceedings Mr. Barbour had due notice.

Immediately upon the discovery of his transgressions she abandoned him and his home and took up her residence with her mother. After the notice of the application for an order for alimony and counsel fees, he called upon her at her mother's residence and sought an interview with her, which he obtained. It took place in the presence of her mother and was continued for more than an hour. The alleged object of the interview upon his part was a reconciliation. He confessed his fault and

pleaded for forgiveness. Amongst other things, in order to induce her to accept his protestation of love and confidence and future conjugal fidelity, he promised that if she would again live with him and have her suit for divorce dismissed he would convey to her the house and lot upon which they had been living, free from all encumbrances. After the most urgent appeal and solemn promises of good faith towards her, and that he would make such conveyance, she consented and promised to return to him and to live with him as his wife and to dismiss the proceedings which had been begun against him for alimony and for divorce.

She did at once return to his home as his wife. She caused the proceedings for divorce to be dismissed immediately. She was faithful to her promise and to her marriage vows. Within a few days she asked him to make the conveyance which he had promised to make. He found an excuse for not doing it immediately, but promised to do it soon. In a few days he was appealed to again, when he absolutely refused to perform his part of the contract. Although it may not be very material to the determination of the real issue in the present proceeding, yet it is in evidence that he has again been guilty of the crime of adultery.

This contract was not reduced to writing. Mrs. Barbour files her bill in this suit setting up these facts, and asks for a specific performance of the contract. No answer has been filed. Two questions are presented : Has there been such part performance of this parol agreement as to take the case out of the statute of frauds and perjuries? If so, can a court of equity recognize a contract of this nature between husband and wife?

The agreement is an agreement respecting the conveyance of land. The consideration was a valuable one. No consideration can be named of higher importance or of more solemn significance. It is difficult to measure it. Dollars and cents afford no adequate conception of the true nature of the consideration moving upon the one side to the execution of this agreement.

This agreement is thus brought within every case that recognizes the doctrine of part performance in the slightest degree.

Upon the part of the wife it is not only partially but entirely performed. She not only agreed to become reconciled to him, but in the sincerest manner, by her conduct, manifested her determination so to continue. Looking at it from a pecuniary standpoint, she gave up all moneys that she would undoubtedly have been entitled to upon her application for alimony and counsel fees, had she pressed her petition against him because of his crime. And more than this she actually paid the costs and expenses incident to the suit which she had carried on to the time of making the agreement. She also dismissed her suit. The sums which she thus paid, and which she undoubtedly would have recovered (since he confesses the adultery), would soon have been very considerable.

But besides these things, he gave her, and she took, such possession of the premises which, by the agreement, he was to convey, as their relation to each other would admit, upon his promise to convey if she would become reconciled and live with him; she consented and went with him, and took possession where they both continued to reside.

I think there can be no possible doubt that these facts show the part performance contemplated by the very highest judicial tribunals which have considered this branch of equity jurisprudence.

If it be said that the payment of money and the taking of possession under the contract be not enough to take the case out of the statute, yet where these things have been done and it appears that fraud has been perpetrated by the defendant, and that the remedy at law is inadequate to complete relief, then it is the duty of a court of chancery to administer relief in such case, notwithstanding the provisions of the statute, and thereby prevent the wrong which the statute was designed to prevent. The following cases are in point: *Phillips* v. *Thompson, 1 Johns. Ch. 131, 149; Wakeman* v. *Dodd, 12 C. E. Gr. 564; Shepard* v. *Shepard, 7 Johns. Ch. 57.*

In the second place, it is not contrary to public policy, as understood in this state, notwithstanding it may be so regarded in others, to maintain the integrity of such contracts. In *Mer-*

*rill* v. *Peaslee, 146 Mass. 460,* it was held by a divided court
in Massachusetts that such contracts ought not to be enforced.
To the same effect is the case of *Copeland* v. *Boaz, 9 Baxt. 223,*
*40 Am. Rep. 89.* But I take it for granted from what has been
said by the courts of this state, respecting agreements between
husband and wife, looking to their separation, that agreements
providing for the peaceable continuance of their marital relations
would be most certainly sustained. In the case of *Emery* v.
*Neighbor, 2 Halst. 142,* the court held that covenants which
purported to be tripartite, the husband being one party, the wife
another and a proposed trustee a third, in the execution of which
the third party did not join, were inoperative and void, but said :
"Where a husband, by articles, places money in the hands of
trustees for ' the sole and separate use of the wife, and to be sub-
ject to her sole order and disposition,' although the articles of
agreement may be wholly inoperative as an article of agreement,
in consequence of the trustees never signing the same, yet if the
wife, upon the faith of this agreement, lived separate and apart
from her husband, and at her death makes a testamentary dispo-
sition of this money, her administrator may recover it from the
said trustee, and her husband will not be entitled to it." In
*Calame* v. *Calame, 10 C. E. Gr. 548,* after a careful review of
the authorities, the court of errors and appeals decided : "An
agreement in writing, made by a husband who had deserted his
wife, to give her certain lands and money, in lieu of all her
claim upon him for maintenance, the offer having been accepted
by the wife, will, on a divorce being granted, be enforced in
equity." In *Adams* v. *Adams, 91 N. Y. 381,* it was held :
"Plaintiff having commenced an action against defendant, her
husband, for divorce *a vinculo,* and having examined a wit-
ness conditionally, who testified to the acts of adultery charged,
in consideration of his executing to her father, for her benefit, a
note for $1,000, agreed to and did discontinue the action without
costs. In an action upon the note, held that it was given for a
good consideration and was valid ; that the transaction could not
be regarded as against public policy." The court further ob-
serves : "We are unable to perceive on what ground the arrange-

ment can be regarded as against public policy. It tends to restore peace and harmony between husband and wife and renew their conjugal relations. Agreements to separate have been regarded as against public policy, but it would be strangely inconsistent if the same policy should condemn agreements to restore marital relations after a temporary separation had taken place. While the law favors the settlement of controversies between all other persons, it would be a curious policy which should forbid husband and wife to compromise their differences or preclude either from forgiving a wrong committed by the other." To the same effect are *Phillips* v. *Meyers, 82 Ill. 67; Reamy* v. *Bayley (Pa.), 9 Cent. Rep. 640; S. C., 11 Atl. Rep. 438; Hart* v. *Hart, L. R. (18 Ch. Div.) 670.*

No answer having been filed in this case, the only reason to be offered for giving the matter so much attention is the interest which the state has in having every such controversy settled in accordance with the soundest public policy.

In my judgment, the prayer of the complainant should be granted. I will advise that the title to the premises be passed from the husband to the wife, through one of the masters of this court.

The petitioner is entitled to costs