[Civ. No. 6036.   Fourth Dist.   Feb. 29, 1960.]

WESLEY BRADEN, Respondent, v. ANNIE BRADEN, Appellant.

Andrews & Andrews, Chester R. Andrews and Richard D. Andrews, for Appellant.

Ralph Robinson for Respondent.

SHEPARD, J.—This is an action for divorce. Each party complained of extreme cruelty by the other and the trial court granted a divorce to each on that ground. Neither party appeals therefrom. As is not uncommon in cases of this kind, there was also a dispute over the equitable adjustment of property rights. This dispute was resolved by the trial court by awarding to the wife all of the furniture and household appliances located in the home occupied by the parties on the separate property of the wife, and by ordering her to return to the husband the sum of $6,000 advanced by him during coverture toward the construction of a new house on the separate property of the wife. From this last portion of the judgment, that is, the award of $6,000 to the husband, the wife appeals.

It appears that the parties hereto were married September 6, 1954. Both parties were well past the age of 50. Each had been previously married and their spouses had died some years previously. Each owned, profitably operated, and derived full support from ranches in the same neighborhood, hers consisting of 40 acres and his of 74 acres. She had no dependents. He had four dependent children. After marriage the parties lived briefly on his ranch, then moved to her ranch. Disagreements and rancorous arguments were frequent. Sometimes they were together during the day and stayed at their own respective ranches at night. Short separations took place, followed by uncertain reconciliations. There is some evidence that she wanted him and his boys to work her ranch and scolded him when he spent time working his ranch or attempting to earn money working for others. After many discussions and frequent disputes, and in an apparent hope of finally resolving their troubles, they determined to build a new house on her place. There is evidence that as a condition of his substantially contributing to the cost of that construction she made the promise that if they could not "make a go" of the marriage she would return the money put into the house by him. He then sold his ranch and the house was constructed. Cancelled checks were introduced in evidence showing payments by him in the amount of $6,601 toward said construction of said house and installation of fixtures therein. The fire insurance policy on the house, with her full knowledge and consent, was taken out and carried in both names. Checks were also introduced in evidence showing payment by him on furniture and appliances in the amount of $914. He testified he bought furniture for the new home at a cost of

$1,200 and that he paid for a number of other expenses not shown by the checks. She could not remember just what he bought. A joint checking account was established at her insistence. Whether she ever put any of her own money in that account is not clear. Much of the evidence is conflicting. However, she does not deny that the checks represent expenditures from his separate funds. She agrees that conversations did occur relating to the repayment of the money put in her house by him if the marriage was unsuccessful, but she denies that she actually promised to return it to him except upon her death.

Faced with these contentions and evidence, it became the duty of the trial court, sitting as a court of equity, to fully settle and dispose of the property relations of the parties to the best of its ability. (*Mergenthaler* v. *Mergenthaler,* 69 Cal. App.2d 525, 530 [160 P.2d 121].)

The first contention of appellant is that her agreement is unenforceable because it was one which would be disruptive of the marital status. She cites in support thereof *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]; *Whiting* v. *Whiting,* 62 Cal.App. 157 [216 P. 92]; *Hill* v. *Hill,* 23 Cal.2d 82 [142 P.2d 417]; *Barham* v. *Barham,* 33 Cal.2d 416 [202 P.2d 289], and other cases.

It is, of course, true that public policy seeks to foster and perpetuate the marriage relation and that contracts between the parties that have as their purpose or effect a tendency to destroy the marriage relation are considered *contra bonos mores* and will not be enforced by the courts. [ However, as is stated in *Barham* v. *Barham, supra,* page 427 [8] : ". . . public policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed." In *Streeter* v. *Streeter,* 67 Cal.App.2d 138, 142 [153 P.2d 441], the court, in quoting from *Hill* v. *Hill, supra,* says: "The validity of a property settlement between spouses 'must be determined in the light of the factual background of each case and considerations of public policy appropriate thereto.' " The correctness of that statement has been confirmed in innumerable cases and is beyond question. In the case at bar the trial judge, after hearing and considering all of the evidence, stated in his memorandum for judgment, "In fact, the whole plan was devised by the parties, acting in the utmost good faith, to further and fortify the marriage relationship. The deal savored of a business transaction, made

with the best of good motives." After reviewing the facts disclosed by the record, we are satisfied that the evidence amply supports the trial judge's conclusion above quoted. (*Bowden* v. *Bowden*, 175 Cal. 711 [167 P. 154, Ann.Cas. 1918A 380].)

Appellant's second contention is that the agreement is uncertain or not yet matured and therefore unenforceable. The trial court concluded that the parties had not been able to "make a go" of the marriage within the meaning of the agreement. Each party, after a substantial period of unhappy disagreements involving a great deal of "fussing and fighting" and several separations, finally asked for a divorce against the other, which was granted. Such a conclusion reached by the trial court on sufficient evidence is binding on this court on appeal. This court cannot reweigh the evidence. (*Barham* v. *Barham*, *supra*, page 426 [3b].)

Next, the appellant contends that the agreement is invalid as attempting to qualify the respondent's duties of support. The trial court, on sufficient evidence, rejected this conclusion, and we agree with the trial court. We see no merit to this point.

Next, appellant contends that the agreement was invalid because it did not contemplate an immediate separation. As has heretofore been suggested, the evidence amply supported the conclusion of the trial court that the agreement was for the purpose of restoring and continuing the marital status of the parties. It did not deprive the wife of her rights of support. It merely retained, conditionally, the separate character of a certain portion of the respondent's property. We see nothing in *Barham* v. *Barham*, *supra*, to militate against its validity.

Next, appellant contends that the agreement was invalid because it was not in writing. The agreement was fully performed as far as respondent was concerned and lack of a writing will therefore not be a bar to enforcement. (*Grant* v. *Long*, 33 Cal.App.2d 725, 742 [6] [92 P.2d 940].) Furthermore, it has been repeatedly held that such agreements are not within the Statute of Frauds, are not required to be in writing, and parol evidence thereof is admissible. (*Estate of Patterson*, 46 Cal.App. 415, 420 [189 P. 483] [Inheritance].)

[ A transfer by one spouse to the other during coverture may or may not cause the property transferred to become the separate property of the recipient, depending on the intention of the parties. Parol evidence is admissible to

prove what the real intent of the parties was and to establish whether or not the property involved is the separate property of one or the other, or common property, or joint tenancy property, or the community property of both. This intent becomes a question of fact for the trial court on the evidence presented to it. (*Horsman* v. *Maden,* 48 Cal.App.2d 635, 641 [5] [120 P.2d 92] (Corporate stock transferred from husband to wife); *Cash* v. *Cash,* 110 Cal.App.2d 534, 538 [4-5] [243 P.2d 115] (Joint tenancy); *Weil* v. *Weil,* 37 Cal.2d 770, 788 [15] [236 P.2d 159] (Deed of realty from wife to husband); *Wheeland* v. *Rodgers,* 20 Cal.2d 218, 222 [1] [124 P.2d 816] (Joint tenancy bank account converted into realty); *Brison* v. *Brison,* 75 Cal. 525 [17 P. 689, 7 Am.St.Rep. 189] (Deed from husband to wife); *McKay* v. *McKay,* 184 Cal. 742, 745 [2-3] [195 P. 385] (Money paid by wife to husband).)

A reading of the foregoing authorities makes clear that the evidence amply supports the court's conclusions. It further makes clear that the court was fully justified in finding that the money put into the house by the husband was never intended to become the separate property of the wife and in treating it as a debt due from the wife to the husband.

Other points made by appellant are mere subheadings of the points hereinbefore discussed, and we believe they are fully covered by the foregoing discussion and authorities.

Judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 28, 1960, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1960.