MARTHA A. MONTGOMERY, Appellant, v. J. P. MONTGOMERY et al., Respondents.

Springfield Court of Appeals, April 4, 1910.

1. HUSBAND AND WIFE: Marriage Contracts: Public Policy. A contract and bond in the sum of $500 was entered into by a prospective husband and his securities, which provided that upon marriage he would treat his wife in a good and proper manner and would not abuse her, the liability, in the case of a breach, being conditioned also on the wife's good conduct; *held*, that the contract was not against public policy but was good and binding upon the parties and that upon a violation of its terms by the husband, the wife could maintain suit thereon against the husband and his securities.

2. ———: ———: ———. The law favors marriage and the maintenance of the marital relation and, with some exceptions, will not recognize a contract or bequest which has for its object the disbarment of one from entering that relation, nor will it uphold a contract by which the dissolution of marriage is to be facilitated; but a contract otherwise legal, having for its consideration a promise of marriage, is uniformly upheld.

3. ———: Contracts: Actions. It is now the settled law in this State that a man and his wife may contract with each other and sue and be sued by each other the same as other parties.

4. CONTRACTS: Public Policy. Whenever any contract conflicts with the morals of the times, and contravenes any established interest of society, it is void as being against public policy.

5. PLEADING: Written Contract Imports Consideration. A contract in writing and signed by the party to be charged imports a consideration, and it is not necessary to plead a consideration in the petition.

142 App—31

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*A. W. Curry* for appellant.

(1) The plaintiff has full capacity to maintain this action although she is the wife of the defendant, John P. Montgomery. Section 4335, R. S. 1899, enfranchises a married woman and makes her a *femme sole* with full power to contract with her husband and maintain any action at law against him. Rice, Stix & Co. v. Sally, 176 Mo. 107; Beagles v. Beagles, 95 Mo. App. 338. (2) The petition states a cause of action. The contract is set out in detail in the petition, and facts are fully alleged showing that its provisions had been violated by the defendant. Hoffman v. Trust Co., 68 Mo. App. 177. (3) The contract was not void as against public policy. Hannaford v. Dowdle (Ark.), 86 S. W. 818; In re Christie Estate, 36 Pa. s. c. 506.

*I. W. Mayfield, J. T. Moore* and *L. C. Mayfield* for respondents.

(1) In this case there can be no doubt but that a contract of this kind invites and encourages a separation of man and wife for pecuniary profit, and is absolutely void as against public policy. A. and E. Enc. Law (2 Ed.), 956; Speck v. Dausman, 7 Mo. App. 165; Blank v. Nold, 112 Mo. 159. (2) The law of this State, both civil and criminal, gave the plaintiff ample protection. Secs. 2926, 2927 and 1861, R. S. 1899. (3) The contract is void as against public policy. Dowing v. Ringer, 7 Mo. 586; Friend v. Porter, 50 Mo. App. 92; Fair Ass'n v. Carmody, 151 Mo. 573; Ehrhardt v. Robinson, 78 Mo. App. 409. (4) The purported contract is void for want of consideration.

COX, J.—Plaintiff filed the following petition (omitting caption):

"Now, on this day, comes the said Martha A. Montgomery, plaintiff, and for her cause of action against the defendants, J. P. Montgomery, P. M. Montgomery and Margaret E. Montgomery, respectfully states to the court that on or about November, 1907, she was duly married in Laclede county, Missouri, to John P. Montgomery, and that defendant, John P. Montgomery, is the husband of this plaintiff. That after the marriage of the plaintiff and defendant, John P. Montgomery, there was born of said marriage one child, now living of tender years, to-wit: eighteen months, and that after the marriage aforesaid, the said defendant, John P. Montgomery, refused to live with the plaintiff, his wife, and wilfully and without cause, deserted and abandoned her and her infant child. That he has wholly failed to support them and furnish any means of existence, either to the plaintiff or to his child; that he has failed to perform his duties as a husband to the plaintiff in that he has abandoned and wilfully failed and neglected totally to support the plaintiff and their infant child, and in that respect, has maltreated and abused the plaintiff; that he has not treated her in a good and proper manner as a husband should treat his wife, in that he has failed and neglected to live with her and support and maintain her and perform his duties towards her as a good husband should do.

"Plaintiff further states that prior to their marriage and about the time of their marriage in November, 1907, the plaintiff and defendants, John P. Montgomery, P. M. Montgomery and Margaret E. Montgomery, entered into a certain contract and stipulation, which said contract is herewith filed as a part of this petition: that by the terms of the said contract the said John P. Montgomery agreed to marry Martha A. Montgomery, then Martha A. McFall, bind himself and the other defendants, P. M. Montgomery and Margaret E.

Montgomery, as his sureties, in the sum of five hundred dollars, to the effect that he should treat her, Martha A. McFall, in a good and proper manner as a husband should treat his wife, and would not maltreat nor abuse her, and if he failed to treat her as above stated, then such obligation should become due and payable upon himself and his bondsmen, provided the said Martha A. McFall should conduct herself in a proper manner in every respect as a wife to the said John P. Montgomery, which was duly executed by the said defendants.

"And plaintiff further states that soon after the execution of the said contract, the plaintiff and defendant, John P. Montgomery, were married and that since that marriage, Martha A. McFall, thereafter Martha A. Montgomery, did conduct herself in a proper manner in every respect as the wife of the said defendant, John P. Montgomery, but that the said John P. Montgomery, in total disregard of the duties as a husband of the said plaintiff, was guilty of gross and improper conduct, as hereinafter set forth, in direct violation of his duties and his contract aforesaid; that by reason of the said neglect and refusal of the said John P. Montgomery to perform the obligations of his contract and his obligation as a husband to this plaintiff, an action is proven upon the said contract, and the plaintiff is entitled to the full sum of five hundred dollars, as provided in said contract; that the plaintiff has been at great inconvenience and expense to support herself and her child; that she has been a charge upon her friends; also that she has suffered great indignities by reason of the desertion of her said husband and suffered great mental anguish by reason of his conduct as herein set forth.

"Wherefore, plaintiff prays for the sum of five hundred ($500) dollars damages and for costs of suit.

"J. P. NIXON,
"Plaintiff's Attorney."

The contract sued upon which was filed with the petition is as follows:

"Know all men by these presents:

"That, I, John P. Montgomery, having agreed and married Martha A. McFall, bind myself and also the following securities, to-wit: P. M. Montgomery and Margaret E. Montgomery, in the sum of five hundred ($500) dollars, to the effect that I will treat her, Martha A. McFall, in a good and proper manner as a husband should treat his wife, and will not maltreat nor abuse her in any manner, and if I should fail to treat her as above stated, then this obligation shall become due and payable upon myself and bondsmen, provided that the said Martha A. McFall shall conduct herself in a proper manner in every respect as the wife of the said John P. Montgomery.

"(Seal)     JOHN P. MONTGOMERY,
"(Seal)     P. M. MONTGOMERY,
"(Seal)     MARGARET E. MONTGOMERY.

"Done this ——— day of November, 1907."

To this petition the defendant filed a demurrer, alleging as grounds therefor:

1. That the plaintiff, Martha A. Montgomery, has no legal capacity to sue and bring this action.

2. That the petition does not state facts sufficient to constitute a cause of action.

3. That the purported obligation herein sued upon is void.

4. That the obligation herein sued upon by the plaintiff is against public policy and void, in that it invites and encourages a separation of man and wife as a source of pecuniary profit.

The demurrer was sustained, and the plaintiff refusing to plead over, judgment was entered against her and she has appealed.

The ground upon which this demurrer was sustained does not appear from the record. The first

ground of the demurrer is based upon the contention that as one of the defendants is the husband of the plaintiff she could not sue him in a court of law. It seems now to be the settled law of this state that a man and his wife may contract with each other, sue and be sued by each other, the same as other parties. [R. S. 1899, sec. 4335; Rice-Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398; Grimes v. Reynolds, 184 Mo. 679, 83 S. W. 1133; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 637; Beagles v. Beagles, 95 Mo. App. 338, 68 S. W. 758.]

As the contract sued upon in this case is in writing, signed by the defendants, it imports a consideration, and it was, therefore, not necessary for plaintiff to plead a consideration in her petition. [R. S. 1899, sec. 894; Hoffman v. Saint Louis Trust Company, 68 Mo. App. 177; Houck v. Frisbee, 66 Mo. App. 16.]

The court must have sustained this demurrer for the reason that he thought the contract sued upon was against public policy, and it is to this ground of the demurrer that we shall direct our attention. Just what contracts shall be considered void as against public policy cannot, in every case, be readily determined because the circumstances under which they may be made and the conditions of the parties which may induce the execution of a contract vary so much that a general rule that will apply to all cases cannot be laid down. It has been said that, "Precisely what public policy is in any given case may frequently be a matter of contention, and its application made a subject of dispute. The strict meaning of the expression has never been defined by the courts, but has been left loose and free of definition in the same manner as 'fraud.' This rule, however, may be safely laid down that whenever any contract conflicts with the morals of the times and contravenes any established interest of society, it is void as being against public policy." [Pueblo & A. V. R. Co. v. Taylor, 45 Am. Rep. 512 (citing Story on Cont., par. 546); McNamara v. Gargett, 36 N. W. 218.]

Our own Supreme Court in Kitchens v. Greenabaum, 61 Mo. 110, said, "Courts have yet never ventured to define in specific terms the meaning of the phrase 'public policy,' but the general rule has been laid down that whenever any contract conflicts with the morals of the times and contravenes any established interest of society, it is void as being against public policy." [Citing Story on Cont., par. 675.]

The Supreme Court of Georgia makes the following very appropriate observation:

"Judicial tribunals hold themselves bound to the observance of rules of extreme caution when invoked to declare a transaction void on grounds of public policy, and prejudice to the public interest must clearly appear before the court would be warranted in pronouncing a transaction void on this account. It is said that the power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." [Smith v. Du Bose, 78 Ga. 413, 3 S. E. 309-314.]

While no general rule applicable to all cases can be laid down, yet it is universally agreed that the promotion of public and private morals is one of the chief purposes of the law, and no agreement which tends to defeat that purpose will be tolerated. To this end, the law favors marriage and the maintenance of the marital relation, and with some exceptions, will not recognize a contract or bequest which has for its object the disbarment of one from entering that relation. [Williams v. Williams, 13 Mo. 211; Williams v. Cowden, 53 Am. Dec. 143.] Nor will it uphold a contract by which the dissolution of marriage is to be facilitated. [Speck v. Dausman, 7 Mo. App. 165; Blank v. Nohl, 112 Mo. 159, 20 S. W. 477.] But a contract otherwise legal, having for its consideration a promise of marriage, is uniformly upheld.

. The same reasoning which leads a court to refuse to enforce a contract based upon an agreed dissolution of marriage also leads them to uphold a contract which is intended to maintain and foster that relation. Thus in Woodruff v. Woodruff (Ky.), 90 S. W. 266, where the wife had separated from her husband by reason of his mistreatment of her, and he, for the purpose of inducing her to return, agreed that if she would return, and should thereafter again be compelled to leave him by reason of his mistreatment, she should receive $50 per month during the remainder of her natural life. The husband, having again mistreated her, she left him and brought suit upon the contract and it was upheld. In the course of the opinion the court said, "We see no grounds upon which it can be maintained that a contract to do what the law would require done without a contract, violates any public policy." A similar contract has been recently upheld by the same court and the reasoning in the Woodruff case approved. [Hite v. Hite (Ky.), 124 S. W. 815.]

It is contended in this case that this contract imposes no duty that the law does not impose as a result of the marriage, and that, therefore, this contract shows upon its face that it is without consideration, and against public policy, because it would tend to estrangement between the husband and wife for pecuniary gain. The terms of the contract itself is a complete answer to this argument for it provides that plaintiff's right to recover thereon, even though defendant may have breached it, is conditioned upon her own good conduct.

The re-establishment of a ruined home, caused by a disregard of the marriage vows by one of the parties, is an object that the courts are swift to assist, and contracts, looking to that end, are guarded with zealous care. For a like reason, when the betrothal has taken place, and one party has wrongfully broken the plighted faith and refuses to consummate the marriage

Montgomery v. Montgomery et al.

agreement, a contract, that will bring about a reconciliation, and on the faith of which, the parties then enter into the marital relation, should be guarded with the same care, and it is the duty of the courts to see that the one who breaches the contract shall respond in damages.

The circumstances which led up to the execution of this contract and the inducement which resulted in the marriage of plaintiff and defendant, J. P. Montgomery, does not appear from the pleading, nor is it written in the contract, but it is obvious to the most casual observer that there was some strong inducement that moved the parties to this course. If it was blackmail on the part of plaintiff, that would be a complete defense if properly pleaded and proven. If the real consideration for the execution of this contract was to quiet well-grounded fears of plaintiff that mistreatment on the part of her intended husband might follow the marriage, and to guard against such a consequence, she exacted this contract, it cannot be said that it was unreasonable, or in any sense against sound public policy. Of what advantage the marriage of defendant, John P. Montgomery, to plaintiff may have been to him, does not appear, but it is fair to assume that he and his sureties regarded it as of the utmost importance to him or they would not have executed this contract in order to bring about the marriage, and, now, after having received that advantage, whatever it was, it would be a subversion of good morals and a sound public policy to permit him to avoid the obligations of his contract.

The judgment will be reversed and the cause remanded. *Gray, J.,* concurs; *Nixon, P. J.,* having been of counsel, not sitting.