MARTHA A. MONTGOMERY, Respondent, v. JOHN P. MONTGOMERY et al., Respondents.

### Springfield Court of Appeals, April 1, 1912.

HUSBAND AND WIFE: Marriage Contract: Bond Conditioned to Treat Wife Properly. Plaintiff's husband, as principal, with the other defendants as sureties, just prior to the marriage between plaintiff and her husband, executed a bond in the sum of five hundred dollars, conditioned that the husband would treat the plaintiff in a good and proper manner, as a husband should treat his wife. In an action based on a breach of the bond, the evidence is examined and *held* sufficient to show that defendant deliberately attempted to get rid of his wife and that the conduct of the defendant was a breach of the bond and that judgment in favor of plaintiff should be sustained.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*I. W. Mayfield & Son, L. C. Mayfield* and *J. T. Moore* for appellant.

(1) This action being on a penal bond nothing should be taken by intendment but all the facts relied on for a judgment should have been set out in the petition, and no such charges are made as this evidence

attempts to prove. Parties can only recover, if at all, on their case as made by the pleadings. As said by the court in the case of Wright v. Fonda & Higgins, 44 Mo. App. 642, ''The rule is elemental that the evidence and instructions must be restricted to the pleadings.'' (2) We submit in all candor if in actions for a penalty for maltreatment as set forth in the pleadings in this case, that if this evidence sustains or entitles the plaintiff to a verdict, then we are deceived as to the law. Wagner v. Telegraph Co., 152 Mo. App. 369; Cowan v. Telegraph Co., 149 Mo. App. 149.

*A. W. Curry* for respondent.

Appellants say ''because this action is on a penal bond the evidence should be strictly construed and nothing should be taken by intendment and the evidence should squarely and clearly come within the pleadings.'' The appellate court is not sitting as a jury. The evidence does clearly come within the pleadings as we have shown. We do not ask that anything shall be taken by intendment in this case, because we are not driven to that extremity. We do invoke the recognized rule of law that a demurrer to the evidence admits every fact to be true, which the evidence in the case tends to prove, whether by direct testimony or by reasonable deductions to be drawn therefrom. Wainwright v. L. & M. Co., 156 Mo. App. 512; Trout v. Gaslight Co., 151 Mo. App. 207; Crossett v. Ferrill, 209 Mo. 704; Meily v. Railroad, 215 Mo. 567; Alexander v. Scott, 150 Mo. App. 213; Cupp v. McCallister, 144 Mo. App. 112. (2) In a demurrer to the evidence the court must indulge every inference of fact in favor of the party offering the evidence, which a jury might indulge with any degree of propriety. Wilson v. Board of Education, 63 Mo. 137; Heine v. Railroad, 144 Mo. App. 447. (3) The appellants have not pointed out the weak place in plaintiff's evidence; have not referred to anything which should have been shown to

make out a prima facie case and was not. The court must study the entire record and find out for itself whether there is a weak place in plaintiff's case. Appellants have not so much as made a statement of the facts in the case. R. S. 1909, sec. 2080. (4) The plaintiff construed the written contract, (executed before the justice at Phillipsburg) from what, the defendant had told her in regard to it, as being a temporary arrangement for separation—until he could build a house and they could live together there as man and wife. The defendant, John P. Montgomery, was present at the trial and heard her make this statement of what he represented to her and what the contract meant; he refused to take the stand and deny her construction of that contract. By this refusal he admitted that her statement of the circumstances under which the contract was made, as well as its meaning was correct. So we have the construction of both parties interested as to meaning of this written contract. Welch v. Mischke, 154 Mo. App. 728; Mulliken v. Haseltine, 141 S. W. 712. (5) If a party is able to testify and has an adequate opportunity to controvert testimony heard by him, the fact of non-denial is relevant and an admission. 16 Cyc. 960; Mabary v. McClurg, 74 Mo. 575; Morrow v. Railroad, 140 Mo. App. 200.

COX, J.—This is the second appeal in this case. The first is reported in 142 Mo. App. 481, 127 S. W. 118. Plaintiff and defendant, John P. Montgomery, are husband and wife. At the time of their marriage they had a child two months old and just prior to their marriage John P. Montgomery as principal with the other defendants as sureties executed and delivered to plaintiff the following bond:

"KNOW ALL MEN BY THESE PRESENTS: That I, John P. Montgomery, having agreed and married Martha A. McFall, I bond myself and also the following securities, to-wit, P. M. Montgomery, Margaret

Montgomery in the sum of five hundred dollars ($500) to the effect that I will treat her, Martha A. McFall, in a good and proper manner as a husband should treat his wife and will not maltreat nor abuse her in any manner and if I should fail to treat her as above stated, then this obligation shall become due and payable upon myself and bondsmen provided that the said Martha A. McFall shall conduct herself in the proper manner in every respect as the wife of the said John P. Montgomery."

After their mariage they went to live at the home of P. M. and Martha Montgomery, the father and mother of defendant John Montgomery. They remained here about ten days when defendant John Montgomery, plaintiff's husband went to his grandfather's, one-half mile away, ostensibly to work to earn money with which to build a house but in fact for the purpose of separating from his wife. This suit followed and at the former trial defendant interposed a demurrer to the petition which was sustained upon the ground that the contract or bond above set out was void as against public policy. Plaintiff appealed and this court reversed the judgment and held that the contract or bond was a valid obligation and could be made the basis of a suit by plaintiff against the parties who executed it. Upon a retrial the plaintiff recovered judgment and defendant has appealed.

The trial was by jury and the instructions were fair to defendants. The only question left for our determination is whether the evidence will support the finding that there had been a breach of the bond. The condition of the bond was, "To the effect that I will treat her, Martha A. McFall in good and proper manner as a husband should treat his wife and will not maltreat nor abuse her in any manner." The evidence on the part of plaintiff tends to show that during the ten days plaintiff and her husband lived together, he was sullen and did not talk much to her. That on

one occasion when a neighbor came in, their child was lying in the cradle crying when the neighbor said, "John, tend the kid" and he replied, "Damn the kid, damn a married man anyway." On another occasion when out hunting with some other young men, he engaged with them in jokes which impugned his wife's virtue. The defendants offered in evidence what they claimed was a release of the bond sued upon as follows: "Contract agreement between J. P. Montgomery and Martha A. Montgomery, his wife, to-wit: Both the above named parties have become dissatisfied and agree to separate by the said J. P. Montgomery paying to the said Martha A. Montgomery twenty-five dollars and they further acknowledge that they both agree to the above contract, this 2nd day of December, 1907.

"J. P. MONTGOMERY,
"MARTHA A. MONTGOMERY.

"Acknowledged and subscribed to before me this the 2nd day of Dec., 1907.

"W. P. MOFFETT, J. P."

Plaintiff admitted signing this contract but said she did not understand its purport and was assured by her husband that it was "only just to show that he wasn't mad until he could build a house for us to go back together." That he told her she could either stay at his father's or her father's until he got the house built. The evidence further disclosed that after they returned from the office of the justice of the peace, defendant left on the same day without saying anything to his wife or telling her when he would come back. That he went to his grandfather's only one-half mile away and a few days thereafter when plaintiff learned that he did not intend to live with her any more, she went to him at his grandfather's and asked him to return and live with her and he refused. Plaintiff then went to her father's and on the same day her husband returned to his father's and has not offered in any way to live with plaintiff since.

A recital of these facts is sufficient to convince any one that defendant, J. P. Montgomery had no intention of living with plaintiff as her husband and the execution of the supposed released before Esquire Moffett was the result of a deliberate attempt on the part of defendant J. P. Montgomery to get 'rid of his young wife and at the same time escape liability on his bond. We have no hesitancy in holding that the conduct of defendant was a breach of his bond and the judgment is therefore for the right party and should be affirmed. It is so ordered. *Gray, J.,* concurs. *Nixon, P. J.,* not sitting.