[L. A. No. 3985.  Department Two.—August 13, 1917.]

OTTILLIE K. BOWDEN, Respondent, v. ROLANDUS F. BOWDEN, Appellant.

CONTRACTS—HUSBAND AND WIFE—CONSIDERATION.—An agreement made by a husband against whom an action for divorce was pending, whereby, in consideration of a reconciliation and dismissal of the action, the community property was divided between them, and the husband agreed that in case of future misconduct on his part giving the wife cause for a divorce, he would pay her the sum of three thousand dollars, is not against public policy, but is supported by a good consideration, and may be enforced.

APPEAL from a judgment of the Superior Court of Los Angeles County. Willis I. Morrison, Judge.

The facts are stated in the opinion of the court.

John C. Stick, for Appellant.

Trippet, Chapman & Biby, for Respondent.

HENSHAW, J.—Differences had arisen between Ottillie K. Bowden, plaintiff herein, and Rolandus F. Bowden, defendant herein, which resulted in an action for divorce, commenced by the wife against her husband, in October, 1909. At the time they held community interests in property, real and personal. While this action was pending, on November 4, 1909, the spouses entered into an agreement whereunder the community property was divided between them. The wife agreed to dismiss the pending action for divorce and together they agreed as follows:

"The undersigned, Rolandus F. Bowden, does hereby promise to pay his wife, Ottillie K. Bowden, the sum of three thousand dollars, should he at any time in the future cruelly treat, abandon, desert or cease to live with the said Ottillie K. Bowden, as husband and wife, or do any other act which would be a cause for a divorce.

"The three thousand dollars to be due and payable on the date of any such cruel treatment, desertion or abandonment on the part of Rolandus F. Bowden of his wife to take place or when he should commit any act giving her cause for a divorce.

"Provided, however, that no part of this sum shall be paid to the said Ottillie K. Bowden should she cruelly treat, desert or abandon or cease to live with the said Rolandus F. Bowden or do any other action which would be a cause for a divorce."

Thereafter, on the thirteenth day of May, 1910, the wife commenced a second action for divorce against her husband upon the ground of cruelty. The husband defaulted, an interlocutory decree in favor of the wife was entered, and it became final on March 18, 1912. Thereafter, on February 13, 1913, the wife commenced this action, demanding payment of three thousand dollars under the written agreement above set forth. The husband answered, the cause was tried, judg-

ment was entered for plaintiff, and the husband has appealed.

Upon the appeal the single proposition urged is that a contract such as this is against the policy of our law under the decisions of this and other courts. The California cases upon which reliance is placed are *Loveren* v. *Loveren,* 106 Cal. 509, [39 Pac. 801], and *Pereira* v. *Pereira,* 156 Cal. 1, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488]. *Loveren* v. *Loveren* is not even remotely in point. There the agreement between the spouses was in the nature of a collusive arrangement, based upon a division of the community property, under which it was to be made easy for one of the spouses to secure a divorce from the other, and this court very properly declared that "the authorities are uniform in holding that any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result . . . is void as *contra bonos mores.*" In the Pereira case, while the facts are somewhat different, the principle controlling the construction of the agreement is, and is said to be, the same as that declared and above quoted from *Loveren* v. *Loveren.* The wife had brought her action for a divorce upon the ground of extreme cruelty against her husband. While the action was pending the parties became reconciled and resumed marital relations. Then on a certain date, in pursuance of negotiations which were pending, they entered into a contract which recited the pendency of the action for divorce, declared an express waiver by plaintiff of her grounds of divorce and an agreement to dismiss the action, and it then proceeded to declare "that if the husband should thereafter so conduct himself as to give the wife a new cause of action for divorce and she should establish the same in a subsequent action against him . . . the husband should thereupon pay to the wife ten thousand dollars, which should be a full satisfaction, settlement, and discharge of all claims of the wife in such action for alimony, costs, counsel fees, support, maintenance of herself, homestead, homestead right, property and benefit of every kind and character." Still further, that the wife (regardless of any increase in the fortune of the husband) waived, abandoned, and relinquished all claims and demands by her or on her part in or to any or all of the husband's property or property rights, whether then owned or thereafter acquired. The opinion points out, amongst other things, that this amount was wholly

disproportionate to the value of the husband's fortune; that for certain grounds of divorce the wife could justly be awarded much more than the ten thousand dollars, and that the existence of such a contract could not be a deterrent to the husband from violating his marriage vows and giving his wife cause for divorce, but would only "encourage him to yield to his baser inclination and inflict the injury." Wherefore, says this court, quoting from *Loveren* v. *Loveren, supra:* "Any contract between the parties having for its object the dissolution of the marriage contract or facilitating that result is void as *contra bonos mores."* Of exactly the same character is the case of *Newman* v. *Freitas,* 129 Cal. 283, [50 L. R. A. 548, 61 Pac. 907], which therefore calls for no more than this mention.

Manifestly, then, these cases cannot be successfully invoked to defeat the contract here before us, for, precisely what, in its essence, is this contract? Postnuptial differences had arisen betweecn the spouses which had resulted in an action for divorce brought by the wife against the husband. They were the owners of community property, real and personal. The husband sought a reconciliation and it was accorded him. The law favors such reconciliation, unless it be effected upon terms expressly forbidden or upon terms expressly disapproved, or, in other words, unless the terms be against the express mandate of the law or against public policy. Did the wife in this contract surrender any of her marital rights? None whatever. Did she in any way make it easier for her husband to inflict on her any marital wrongs? Not in the least. Did she extend, actually or impliedly, any inducement to him to commit such wrongs, either upon the theory that she would get a divorce because of them, or that he would be less mulct financially than, saving for the contract, he would be (which is the Pereira case) if he did commit such wrongs? Nothing of this appears in the contract. In brief, what the contract does do is to reserve to the wife without impairment all her marital rights, to reserve to the husband without impairment all his marital rights, to waive upon the part of neither their legal or equitable rights for any wrong which either might commit against the marriage status, but simply to impose upon the husband the duty, in addition to that which the law imposes, of observing his marital vows and obligations, or, failing to do so, to pay to

the mistreated wife something in addition to that which the law would award her in her action based upon such mistreatment either for divorce or for separate maintenance. It is impossible to read this contract in any other light. So far from the consideration being base, it is worthy and commendable. It neither asks nor invites the husband to do a wrong. It endeavors to deter him from doing wrong by making him liable to a penalty in addition to that imposed by law if he does do wrong.

On principle, therefore, we hold that neither the consideration nor the purpose of this contract is base, but that both are worthy, and that whatever may be said touching the invalidity for lack of consideration only of such a contract, if it be an antenuptial contract, it is not without consideration where a wife has suffered such wrongs from her husband and has condoned his offenses, has resumed with him the marriage relation and re-established the marriage status, all of which the law favors, upon condition, not improperly imposed by virtue of sad experience, that he shall not again offend. Such a wife has found the legal obligation to be insufficient. It would indeed be a harsh rule which after such an experience should say that she may not invoke other aids in her efforts to induce her husband thereafter to remain true to his marriage vows. The cases that hold that an antenuptial agreement to this effect is without consideration are based upon the view that at the outset of the relationship the law itself imposes the prescribed duty upon both spouses, and that therefore there is no consideration where one spouse agrees that if he does offend in the future he will pay a penalty in addition to that which the law may exact. We need not discuss nor even collate these cases, as they are not addressed to the situation here before us. But, upon the other hand, cases which are addressed to the situation here presented are numerous, and overwhelmingly they uphold the validity of contracts such as this. It may be well to consider briefly a few of them. Thus in *Terkelsen* v. *Peterson*, 216 Mass. 531, [104 N. E. 351], the husband and wife had separated because of his faults. An agreement was entered into through the medium of a trustee looking to the resumption of marital relations, and under this agreement it was covenanted that the husband would comport himself in all respects as it was his duty to do, and that in the "event of his drinking or ill-

treating the wife resulting in her leaving him again, he would be liable for her comfortable maintenance and support." The supreme court of Massachusetts in an opinion written by Rugg, Chief Justice, held that the consideration for such an agreement was not the performance by either the husband or wife of their marital duty, nor was it invalid as an agreement to separate, but that it would be sustained as an agreement for the re-establishment of the family and to make better provision for the wife's support in the event that the husband again offended. In *Duffy* v. *White,* 115 Mich. 264, [73 N. W. 363], the supreme court of Michigan was called upon to consider the same question. There the husband discovered his wife's infidelity and had separated from her. Afterward, by mutual agreement, the parties resumed marital relations under a written trust, in pursuance of which a portion of the separate property of the wife was conveyed by her through a trustee to the husband, the trust providing that out of the income the husband should deposit monthly to his wife's account one-half of the income, and the remaining one-half should be used for the maintenance of their minor child and for himself. Later the wife eloped with another man and subsequently sought to avoid this agreement upon the ground that its consideration was without validity. The supreme court of Michigan declared: "It has been held in this state that a conveyance of property by a husband to his wife in consideration of the discontinuance of a meritorious suit for divorce, and the resumption of marital relations, was upon a valid and sufficient consideration; and the same has been held elsewhere, almost without exception. . . . In *Burkholder's Appeal,* 105 Pa. St. 33, the contract provided, among other things, for the payment of certain sums in case of a subsequent separation. The case arose after the termination of the marriage by death, and the contract was enforced." The court said, upon this point: "The provision in the contract in the present case is peculiar. It does not offer any premium to the wife to bring about a separation. On the contrary, it places a penalty upon it. So it cannot be said to be a contract 'looking to and favoring a separation' at her instance. As to the husband it does not enlarge his right to a separation beyond that given by law, if we construe the contract in the light of surrounding circumstances. A proper inference from its provisions, and the

circumstances under which it was made, justify us in a restriction of the term 'flagrant misbehavior or desertion' to such as would be ground for divorce. If this claim does not enlarge his rights beyond those existing by law, we do not see how it can be said that the provision was illegal and void as against public policy.'' Changing the sex of the spouses, the language of the Pennsylvania case has direct applicability to the present one. In *Hite* v. *Hite,* 136 Ky. 529, [124 S. W. 815], the husband, when intoxicated, beat and maligned his wife, giving her ground for divorce. She had separated from him and resumed marital relations, he promising to make suitable provision for her support if his course of conduct again compelled her to leave him. This agreement was based upon her waiving or condoning his past offenses and living again with him as his wife. The agreement was in writing, and, says the supreme court of Kentucky, ''there was ample consideration to support the contract. It [the law] favors the reconciliation of husband and wife. A contract for the re-establishment of a ruined home is one which equity is swift to approve. Whether the contract in question is contrary to public policy is not to be determined from one clause of it, but from the whole instrument. The contract as a whole does not tend to produce estrangement between husband and wife. They were already estranged. The contract brought them together, and, taken as a whole, it is in aid of the marital relation, and is therefore not opposed to public policy, but in accord with it. Thus its execution is sanctioned by the law, and it should be upheld, unless appellant's contention that he was deceived in its execution is supported by the proof. In *Montgomery* v. *Montgomery,* 142 Mo. App. 481, [127 S. W. 118], the supreme court of Missouri was called upon to consider an antenuptial contract entered into, of course, before offense given by the husband and before the possibility of reconciliation or condonation. The supreme court of Missouri upheld this contract, holding that it was not without consideration, notwithstanding that it obliged the husband to do no more than the law itself declared he should do, and that such a contract would not tend by its very nature to create an estrangement between the spouses, and it based its conclusion upon cases such as the one before us, declaring that as to those cases, where the end is the reconciliation and the re-establishment

of a ruined home, "contracts looking to that end are guarded with zealous care." In *Howell* v. *Howell*, 42 Okl. 286, [141 Pac. 412], there had been a disagreement between the spouses and a threat of divorce. A reconciliation was effected under contract which declared: "It is understood that the consideration of this agreement is that said Minnie H. Howell return and again assume the marital relations with William T. Howell, intending to live with him as long as he shall abstain from alcoholic beverages." The familiar grounds of invalidity were urged against this contract, but the supreme court of Oklahoma declared: "As we view it, the contract was in contemplation of, and for the very purpose of, effecting a reunion rather than of providing or looking forward to another separation; in fact, it had this result, and for three years thereafter they lived together. Having this view of the contract, it is not open to the objection urged." In *Reamey* v. *Bayley* (Pa.), 11 Atl. 438, the supreme court of Pennsylvania held that a bond given by a husband in pursuance of a postnuptial agreement between him and his wife, which agreement stipulated that the bond, whose penalty only became due on the contingency of the husband not treating his wife kindly and faithfully, is not void, and upon maltreatment of the wife by the husband payment of the bond may be enforced by action. In *Sommer* v. *Sommer*, 87 App. Div. 434, [84 N. Y. Supp. 444], the supreme court of New York held that where a contract looking to reconciliation and a resumption of the marriage relations provided that if the husband should desert the wife or fail to support her she should immediately become vested with her dower interest in his realty is not against public policy but in harmony with it." Bishop (1 Bishop on Marriage and Divorce, sec. 76) declares the principles of the adjudications to be that "an agreement to abandon the pending divorce suit and renew cohabitation being in aid of marriage accords with public policy and the courts will enforce a promise founded upon it as a consideration."

Under the conviction that enough has been said to establish the validity of this agreement and to render unnecessary any further discussion, the judgment and order appealed from are affirmed.

Lorigan, J., and Melvin, J., concurred.