[Civil No. 4563.   Filed June 5, 1944.]

[149 Pac. (2d)  674.]

R. L. TYSON, Appellant, v. LELA TYSON, Appellee.

330

Mr. Theodore G. McKesson, for Appellant.

Messrs. Laney & Laney, for Appellee.

DE CONCINI, Superior Judge.—Matters involved in this case are founded upon a reconciliation contract between husband and wife. The parties separated in July, 1937, and the wife filed a suit for separate maintenance. The husband answered and cross-complained for a divorce. The wife amended and asked for a divorce and a property settlement. At the request of both parties, their respective actions were dismissed.

Simultaneously the parties entered into a "Property Settlement" and a "Reconciliation Agreement" on February 1, 1938. Lela Tyson, the appellee, plain-

tiff below, brought this suit for enforcement of the provisions of the Reconciliation Agreement.

The court made findings of fact and conclusions of law to which the defendant Tyson objected and appealed therefrom citing seventeen assignments of error based on five propositions of law and further that the findings of fact are inconsistent with the evidence.

There is evidence in the record to sustain the following excerpts of findings of fact of the lower court; that in the month of July, 1937, the parties were separated and the appellee instituted her action for separate maintenance in the Superior Court of Maricopa County; both parties amended their pleadings and asked for a divorce; while that action was pending the parties made and entered into two certain writings, entitled "Property Settlement Agreement" and "Reconciliation Agreement" which were executed at the same time and, taken together, constituted the entire written agreement between the parties.

In the first agreement the appellee agreed and did execute a deed and bill of sale to all of their community property to her husband the appellant, and she agreed that the property should be considered his separate property; the husband, among other things, agreed and settled $5,000 upon her in bonds and notes, which was to be her separate property. The parties further agreed to dismiss their respective divorce actions.

The "Reconciliation Agreement" provided that they would condone each other's actions prior to July 28, 1937; approved the aforesaid "Property Settlement" and again live and cohabit as man and wife. They further agreed that the husband could expend reasonable expenses for his three grown children by a prior marriage and he would support the wife and the three children of the parties. Paragraph 8 of

the "Reconciliation Agreement" is important and is quoted verbatim:

"8. It is further agreed that in the event said parties live together as husband and wife and do not separate for a period of three years from and after February 1, 1938, and said parties are on the 1st day of February, 1941, living together as husband and wife happily and peacefully then the party of the second part herein, R. L. Tyson, agrees to execute proper conveyances to the party of the first part wherein she, on said 1st day of February, 1941, is to receive a one-half interest in all property then owned by R. L. Tyson, including real and personal property, with the exception of the house and three lots in Tucson, Arizona, more particularly described as 130 East Helen Street, Tucson, Arizona.

"If said parties are living together satisfactorily and happily on February 1, 1941, the wife on receiving a one-half interest in all real and personal property from said R. L. Tyson, the said party of the first part shall account to the party of the second part for the sum of Five Thousand ($5,000.00) Dollars with interest thereon at the rate of five (5%) per annum which said sum shall also, on February 1, 1941, become the community property of the husband and wife, if said first party receives the proper conveyances of a one-half interest in the property in the last paragraph above mentioned."

The lower court further found that the appellee carried out her part of the agreement except insofar as she was prevented therefrom by the wrongful conduct of the appellant; that the appellant with the purpose of compelling his wife to separate from him and thereby evade carrying out their contract adopted a course of cruel conduct toward her, both physical and otherwise; and carried it on continuously from about two months after the contract was signed until after February 1, 1941, when she brought this suit.

That the parties lived together as husband and wife continuously from February 2, 1938 to December 6, 1940, when he left for the avowed purpose that he would not be bound under the contract to convey her one-half of his property. The lower court further found that they continued to have sexual relationship after December 6, 1940, although he did not reside in the same house.

The judgment of the lower court in holding that the wife was entitled to specific performance based on the findings of fact was correct. Where there is evidence in the record to sustain the lower court's findings as there was in this case, this court will not disturb those findings even though there was contradictory evidence as well.

While the facts in this case were that the parties did not live together peacefully and happily for a period of three years as provided in the contract, yet it was no fault of the wife's because the husband prevented the fulfillment of that condition by his own action.

17 C. J. S., Contracts, § 468 subd. b.:

"One who prevents the fulfillment of a condition precedent, or its performance by the other party, may not take advantage of his act, and the performance of the condition is excused."

Practically the same thing is stated in Restatement of the Law, Contracts, Vol. 1, Sec. 295, p. 438.

There are a number of important questions raised on an appeal in this case. Appellant raises the following:

First: That this is a case of fraud, and the appellee has not alleged and proved fraud at the time of entering into the contract which appellant claims was essential because all the promises were to perform future acts. This is an action for specific performance and not one of fraud. The case of *Waddell*

v. *White,* 56 Ariz. 420, 108 Pac. (2d) 565, relied upon by appellant, has no application here because appellee does not sound her action in any element of fraud. Such contracts as the one in dispute have been held good as will hereinafter be set out.

Second: That such contracts are illegal and unenforceable because they are against public policy, and are void for want of consideration.

Agreements to separate, where no just cause exists, are against public policy but reconciliation agreements are favored by public policy. Restatement of the Law on Contracts, Chap. 18, Sec. 584, also Sec. 585. ''A bargain between married persons who have separated or been divorced, or who contemplate separation or divorce, for reconciliation, is not illegal.''

Justice Holmes' excellent language in the dissenting opinion in the early case of *Merrill* v. *Peaslee,* 146 Mass. 460, 16 N. E. 271, 4 Am. St. Rep. 334, is the majority opinion today.

This court adopted the law that separation agreements were not against public policy. *Roden* v. *Roden,* 29 Ariz. 398, 242 Pac. 337, 339.

'' . . . It is doubtless true that husband and wife cannot make an agreement waiving or limiting this right of support before the initiation, or during the continuance, of the matrimonial community. Nothing, however, is commoner under our modern practice than such contracts when a separation is imminent or after it has occurred, and if they are not obtained by fraud or undue influence, they are generally upheld.''

In *Goodwin* v. *Goodwin,* 47 Ariz. 157, 54 Pac. (2d) 268, 270, we said:

'' . . . If a settlement of property rights is made in contemplation of the possibility of a divorce between the parties, where just cause for divorce exists, so that, in substance, the only controverted issue which could arise would be a settlement of the prop-

erty rights, such a settlement made in advance of actual divorce proceeding is valid, and, if obtained without fraud or undue influence, is binding upon the parties. . . . when no real cause exists therefor, is contrary to public policy, and void *ab initio.*" 13 C. J. p. 466, § 408; 17 C. J. S., Contracts, p. 621, § 236.

■ The Reconciliation Agreement in this case was based on a present separation and in contemplation of furthering the marital relationship; therefore, it was based on a good consideration and not against public policy.

This court is not unmindful of the fact that where the parties resume marital relationship, as they have here, and the consideration for the continuing of such relationship for a period of three years, was to be passed from the husband to wife at the end of the three-year period, that such "happy relationship" would in some cases be hard to prove. It might easily be that either spouse would make it impossible for the other to perform, yet do it so subtly that it might be nigh on impossible to prove.

Such a condition as "if said parties are living together satisfactorily and happily on February 1, 1941," is extremely nebulous. The minds of contracting parties may have widely divergent ideas of what constitutes "satisfactorily" and "happily." However, the court below found the husband guilty of certain overt acts which constituted a breach of this condition, whatever construction might be placed upon it. It was unnecessary for the lower court to pass upon whether the relationship of the parties was "satisfactory" and "happy" on February 1, 1941, because they were not living together at such time, and therefore this court is not called upon to pass upon the validity of such a condition precedent.

In this case we must necessarily look at the background surrounding the property settlement and the

reconciliation agreement. Each had sued the other for divorce. In the reconciliation contract, the parties agreed among other things, as follows: "And condone any and all of the acts of either of the parties hereto for anything committed by either of them prior to the 28th day of July, 1937." Taking that for what it says and the fact that each had sued the other for divorce, we must then conclude that one or both of the parties had given the other grounds for suit for divorce. Such being the case a reconciliation contract, which tended to bring a resumption of the marital relationship is generally favored in the law and in no way does it tend to break up the marriage relationship.

The case of *Bowden* v. *Bowden,* 175 Cal. 711, 167 Pac. 154, L. R. A. 1918A, 380, held:

"*Agreement to Resume Marital Relations—Validity.*

"Where a wife sued for divorce, and, on her agreeing to dismiss the action, her husband promised to pay her $3,000 should he at any time in the future do any act which would be a cause for divorce, the agreement providing that the $3,000 was payable on the date of any such act, but that no part should be paid to the wife should she give the husband any cause for divorce, such agreement was valid and based on good consideration."

The same case cites the following cases as authority upholding such agreements: *Terkelsen* v. *Peterson,* 216 Mass. 531, 104 N. E. 351; *Duffy* v. *White,* 115 Mich. 264, 73 N. W. 363; *Hite* v. *Hite,* 136 Ky. 529, 124 S. W. 815; *Montgomery* v. *Montgomery,* 142 Mo. App. 481, 127 S. W. 118; *Howell* v. *Howell,* 42 Okl. 286, 141 Pac. 412.

*Yost* v. *Yost,* 124 Neb. 608, 247 N. W. 583, 584,

"Wife leaving husband for just cause may exact pecuniary consideration for resuming marriage relation."

"In *Sommer* v. *Sommer,* 87 App. Div. 434, 84 N. Y. Supp. 444, the Supreme Court of New York held

that, a contract looking to reconciliation and a resumption of the marriage relations which provided that, if the husband should desert the wife or fail to support her, she should immediately become vested with her dower interest in his realty, is not against public policy, but in harmony with it.

"Bishop (1 Bishop, Marriage and Divorce § 76) declares the principles of the adjudications to be that:

" 'An agreement to abandon the pending divorce suit and renew cohabitation, being in aid of marriage, accords with public policy, and the courts will enforce a promise founded upon it as a consideration.' "

The third proposition of law raised by appellant is, that the lower court erred in decreeing the wife was entitled to a money judgment and specific performance for certain property as her sole and separate property.

The parties entered into two agreements simultaneously. The first was a "Property Settlement" which set out that each party's property was to be his separate property. The "Reconciliation Agreement" was silent as to whether the property was to be separate or community in the event the wife was entitled to her one-half share. However the latter agreement did state that in the event the wife should become entitled to one-half of the property, she would then be liable to account to her husband for " . . . $5,000.00 with interest at the rate of 5% per annum, which said sum was also on February 1, 1941 to become the community property of the husband and the wife . . . ".

This case is of first impression in this state both as to the enforcement of this type of contract and the interpretation of paragraph 8 of said contract. There is a dearth of authority in point as to its interpretation.

In *Schofield* v. *Gold,* 26 Ariz. 296, 225 Pac. 71, 73, 37 A. L. R. 275, on a rehearing we said:

"This court has held in the case of *Main* v. *Main*, 7 Ariz. 149, 60 Pac. 888, that a deed of gift by the husband to the wife of community property invests the wife with the entire estate as her separate property, for the reason there stated that some effect must be given to the deed, and the only possible effect of such conveyance is to change the character of the property conveyed from community property to the separate property of the wife."

In the present case we cannot say that a conveyance by the husband to the wife implies a conveyance to her as separate property because at the time of the proposed conveyance the property was not the community property of the parties but his separate property. Now if the parties had agreed on a property settlement pursuant to a divorce or separation some force might be given to the argument that each was to have his separate property; but here the parties agreed on a reconciliation, and in the event they could live happily together for a period of three years and were actually living together on a date certain the husband would convey a one-half interest in the property to his wife. It appears more reasonable that the parties contemplated a community estate while living together rather than a separate estate.

The lower court found that the two contracts were made at the same time and should be construed together. The first settled their property rights and each was to have his separate property. Appellee contends, on the rule of construction of contracts, that that interpretation should be carried over to the reconciliation agreement because having settled their property rights there is no more to construe. Such a proposition is not sound, for two reasons; first, had the parties reconciled their differences they would then have a marital relationship with separate property rights in a community state, without specifically

contracting for it; and secondly, because. Paragraph 8 of the Reconciliation Agreement states that in the event of a division of the husband's property with the wife then the wife "shall account to the husband for $5,000.00 (which she received in the property settlement) plus 5% interest *which sum shall also on February 1, 1941, become the community property of the husband and wife.*"

██ Restatement of the Law, Contracts, Sec. 236:

"(a) An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect."

"(c) Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions."

██ Counsel for both parties stress the distinction as to the meaning of the word "also." It is true that the word has been construed to mean both "likewise, in like manner" and "in addition, too." Taking the contracts as a whole in view of the background it seems more reasonable that in this instance the word "also" means "likewise, or in like manner." However, assuming the word "also" had been omitted then the contract would have read "which sum shall become . . . the community property of the husband and wife." Under the general rule of construction of contracts set out above and the reasonableness of the theory of it being community property, it is more reasonable to conclude that if the wife's property was to be considered community, the husband's should be community as well, rather than one should be community and one separate.

In the case of *Schwartz* v. *Schwartz,* 52 Ariz. 105, 79 Pac. (2d) 501, 116 A. L. R. 633–638, this court held that the *corpus* of a trust fund set up for the benefit of the wife by the husband was to be considered community property in dividing up the estate of the parties in a divorce action, where the trust was silent as to whether it was community or separate property of the wife.

If the case is at all doubtful, the following Arizona cases are in favor of treating that which either spouse may own as community property: *In re Torrey's Estate,* 54 Ariz. 369, 95 Pac. (2d) 990; *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B, 70; *Greer* v. *Goesling,* 54 Ariz. 488, 97 Pac. (2d) 218; *Malich* v. *Malich,* 23 Ariz. 423, 204 Pac. 1020.

In *Volz* v. *Zang,* 113 Wash. 378, 194 Pac. 409, 410, the court said in construing a contract between husband and wife that, "The policy of the law is in favor of community property." The latter case is from Washington. In *Pratt* v. *Daly,* 55 Ariz. 535, 104 Pac. (2d) 147, 152, 130 A. L. R. 341, we held, "The community property laws of Arizona are more like those of Washington than of any other state, and the rulings of the courts of that state are very persuasive when similar questions arise under our law."

It is the opinion of this court that the husband's property as of February 1, 1941, with the exception of that excluded in the contract be considered the community property of the appellant and appellee herein. All other property acquired since that time by the parties will not be considered here but the same will be of whatever nature as provided for by law. The parties will no doubt seek redress in the divorce court if they cannot further reconcile their differences, and at that time their subsequently acquired property rights may be settled.

The judgment of the lower court is affirmed in all respects except the wife's judgment against the husband should be changed to one in which the wife shall have a one-half community interest in the husband's property as above indicated.

Assignments of error under propositions of law Nos. 4 and 5 raised by the appellant have either been disposed of by the above or have no merit.

Reversed in part.

Affirmed in part.

McALISTER, C. J., and STANFORD, J., concur.

NOTE: ROSS, J., having disqualified, the Honorable EVO DE CONCINI, Judge of the Superior Court of Pima County, was called to sit in his stead.